UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-00171-01-CR-DGK |
| | ) |
| KERMIT WASHINGTON, | ) |
| Defendant. | ) |

## SENTENCING MEMORANDUM

**COMES NOW** Kermit Washington, by and through counsel Robin D. Fowler, and submits his sentencing memorandum in the above-captioned case.

## BACKGROUND

On November 30, 2017, Mr. Washington waived indictment and pled guilty to a two-count information charging two counts of filing false tax returns in violation of 26 U.S.C. 7206(1). Mr. Washington also pled guilty to count 4 of the superseding indictment, charging aggravated identity theft in violation of 18 U.S.C. 1028A. Mr. Washington has remained at liberty on bond since that time. The presentence report (PSR) (Doc. 110) calculates a total offense level of 28 on the tax counts (¶76), and a criminal history score of I. This yields a guideline range of 78-97 months in custody (¶115). The identity theft charge requires a consecutive sentence of 24 months (¶115). As calculated his total guideline range is therefore 102-121 months, capped by a maximum possible sentence on all counts of 96 months.

Mr. Washington originally objected to the base offense level found in ¶70, arguing that the base offense level should be 14, as opposed to the base level of 20 in the PSR. As will be made clear below, Mr. Washington is hereby abandoning this objection. Mr. Washington does however still challenge the two-level enhancement for sophisticated means found in ¶72, and also challenges the two-level enhancement for abuse of a position of trust in ¶74. If these enhancements are found to be inapplicable, Mr. Washington's guideline range for the tax offenses would be reduced to 51-63 months, with a total overall range (adding the identity theft count) of 75-87 months. Further argument on these issues follows below.

## **ARGUMENT AND AUTHORITIES**

I.  **Legal standard for determining Mr. Washington's sentence.**

As the Court knows, using the factors in 18 U.S.C. §3553(a) a district court is to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing, and the factors set out in that statute. Those factors, among others, include the nature of the offense and background of the defendant, the need for the sentence to reflect the seriousness of the offense, provide deterrence, just punishment, and protect the public. The sentence should also avoid "unwarranted" sentencing disparities between similarly situated codefendants. In a series of cases, *United States v. Booker,* 543 U.S. 220 (2005), *Gall v. United States,* 552 U.S. 38 (2007), *Kimbrough v. United States,* 552 U.S. 85 (2007), and *Rita v. United States,* 551 U.S. 338 (2007), district courts are to "give respectful consideration to the guidelines, … [but

are permitted] to tailor the sentence in light of other statutory concerns as well." *Kimbrough,* 552 U.S. at 101.

Sentencing courts are charged with first calculating the guideline range, then considering what length of sentence is appropriate for the specific individual defendant. *United States v. VandeBrake,* 679 F.3d 1030, 1040, n. 7 (8th Cir. 2012). *VandeBrake* and other cases hold that courts must first determine the individual guideline range, determine any appropriate upward or downward departures from the guidelines, and then decide whether to vary from the guideline based on the factors in 3553(a). A variance is allowable so long as it is reasonable. A number of statutory factors (nature and seriousness of the offense, need to promote respect for the law, adequate deterrence and punishment) deal generally with the seriousness of the offense and the societal need for punishment. Mr. Washington concedes that the offenses in this case are serious, but the question remains, how many months in prison are "sufficient, but not greater than necessary" to adequately serve the statutory factors, as specifically applied to Mr. Washington for his actions?

## II.   Base Offense Level

After reviewing the evidence, the guidelines, and the authority provided by the government on this issue, Mr. Washington no longer objects to the calculations in the PSR in ¶70, and therefore does not dispute that the tax offense begins with a base offense level of 20. This is because an excise tax, even if punitive and severe in the same ways that penalties and interests are, is still characterized as a tax.

However, as Application Note 1 to 2T1.1 makes clear, tax losses in 7206 offenses do not include penalties and interests. Punishment is therefore generally calculated using tax loss figures using the Tax Table found in USSG 2T4.1, which calculates the offense level based on the actual tax benefit the defendant received, that is, excluding penalties and interest. Here, by contrast, Mr. Washington's guidelines are calculated using excise taxes, with a tax loss of approximately $967,000 (¶52), not the $90,000 figure (¶49) which was the actual tax benefit he received based on his false returns. In terms of the 3553(a) sentencing factors, which will be addressed further below, we believe that this should be the basis for a variance, given the 6 level increase he received under these calculations. We believe that this should be considered when the Court evaluates the "nature and circumstances of the offense" under 3553(a)(1), and the "seriousness of the offense…[and]…just punishment" provisions of 3553(a)(2).

**III.     Sophisticated Means**

USSG §2T1.1(b)(2) provides a two-level increase if the offense involves sophisticated means. Application Note 5 of the commentary to that section states that sophisticated "means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means."

While parts of the government investigation into this and related cases was certainly complex, Mr. Washington's tax evasion was not. The tax charges in this case

involve Mr. Washington's use of charity funds for personal expenses, and not reporting those benefits as income on his personal taxes. There were no fictitious entities, corporate shells designed to hide payments, or foreign bank accounts involved. In essence he simply made personal use of the funds, which were not especially hard to track, and did not report those benefits as income. This is about as basic and non-sophisticated as a tax case can be.

In tax cases, some defendants have received the enhancement for using sophisticated means, while in other cases the enhancement was not applied. Defendants who have received this enhancement have all committed acts far more complex than using corporate or charitable funds to pay personal expenses; and then not claiming those payments as personal income. *See, for example*: *United States v. Melton*, 870 F.3d 830, 843 (8th Cir. 2017) (enhancement appropriate where the defendant concealed a payroll tax liability by making false entries in corporate ledgers, prevented others from accessing certain accounting software, wrote false statements and presented doctored IRS forms to an auditor (Barron) to show that the taxes had been paid, among other issues); *United States v. Laws*, 819 F.3d 388, 394 (8th Cir. 2016) (repetitive conduct committed by this defendant not enough alone for the enhancement, but did apply here given the additional use of multiple bank accounts and P.O. boxes, and multiple tax returns with false addresses with no preparer listed); *United States v. Jones*, 778 F.3d 1056, 1059 (8th Cir. 2015)(a case where this Court appropriately applied the enhancement where the defendant submitted blacked-out bank accounts, commingled personal and business accounts, dealt in cash, lied about accounts receivable, used multiple EINs for one company, and secretly operated another

5

company); *United States v. Hart*, 324 F.3d 575, 579 (8th Cir. 2003)(enhancement improperly applied where defendant failed to keep records, and had income paid to a corporation and transferred to a private banker).

In its Sentencing Memorandum (Doc. 115) the government describes Mr. Washington's conduct as sophisticated, in that he made false claims to solicit contributions, vouched for the use of eBay and PayPal in certain ways, and used individuals as officers and directors without their permission. However, the crimes he plead guilty to involved the filing of false tax returns. While the acts the government describes may have increased the donations that were made to his charity, there would have been no tax evasion had he reported the personal expenses he received. Acts which tended to increase contributions to his charity should, we believe, be viewed separately from the filing of false personal tax returns. Had he properly claimed the personal benefits he received from the charity, no matter how those funds were generated, there would have been no crime.

In this case Kermit Washington received charitable contributions from several sources and used much of it for personal expenses in the tax years at issue. He did not claim all of the contributions on his charity's returns, nor did he claim the personal funds he received as income on his personal tax returns. This conduct, while criminal, was not "notably more complex or intricate than the garden-variety version of that offense." *Laws*, 819 F. 3d at 393. The enhancement for sophisticated means should not apply.

## IV. Abuse of a position of trust

USSG §3B1.3 provides a two-level increase "if the defendant abused a position of public or private trust, or used a special skill, in a matter that significantly facilitated the commission or concealment of the offense." Mr. Washington believes this enhancement is inappropriate in his case, as he was not in a position of trust in relation to the victim in this case, the United States.

The government in its memorandum (Doc. 115, 26-29), claims that Mr. Washington abused many positions of trust. The claim is that he abused his position of trust to the NBA, various donors, PCA's volunteers and tax preparer, and the American people as tax-payers, among others. Yet this argument overlooks a key element in this enhancement, that it "applies only where the defendant has abused discretionary authority entrusted to the defendant by the victim; arm's-length business relationships are not available for the application of this enhancement." *United States v. Trice*, 245 F.3d 1041 (8th Cir. 2001). In *Trice,* the Eighth Circuit found error when the defendant, who was president of a non-profit, received this enhancement for making a false statement under 18 U.S.C. 1001, noting that he was "not in a position of trust vis-à-vis the United States." *Id.* As was stated in a law review article dealing with this enhancement, "[A]t a minimum, the position of trust must stem from the defendant's relationship with the victim. That is, the victim must actively confer trust upon the defendant, and the defendant must violate that trust. In the 'position of trust' realm, this seems to be the only statement in which courts agree." *The Federal Sentencing Guidelines' Abuse of Trust Enhancement: An Argument for the Professional Discretion*

*Approach*, 63 Fla. L. Rev. 457, 471 (2011). Since Mr. Washington held no position of trust in relation to victim United States in this case, this enhancement should not apply.

**V.     18 U.S.C.§ 3553 Sentencing factors**

Mr. Washington is a 66-year-old man with no prior record. Notwithstanding the offenses in this case, he has a long history of charitable work and made many trips to Africa in an effort to assist those less fortunate that himself. On many of these trips he took doctors and nurses, paying for their trip and their expenses. The victim of the identity theft in this case was a doctor whom he had paid to travel with him to Africa on several occasions, and with whom he had worked for many years. In a sworn statement she provided in this case, she told the government that "especially in the early years [of her work with Kermit Washington & PCA] he paid for everything. He paid for the volunteers, the meds, the accommodations, the transport. He did volunteers (sic) for Project Contact Africa, and he would do the raffle and pay for everything." Given this background Mr. Washington did not think she would object to being associated in an official position with this charity, and he is not aware of any harm to her that action caused. This is not a defense to the charge, of course, but offered by way of mitigation. He should have course have obtained her permission before using her good name in connection with his charity, and he admitted as much by pleading guilty.

The indictment in this case alleges that Mr. Washington and his charity improperly profited by acts of certain co-conspirators. While it is true that Mr. Washington received over $81,000.00 from Reza Devachi, Mr. Devachi received more than $900,000 in benefits from his use of PCA, per his plea agreement. While Mr.

Washington received $155,000.00 from Ron Mix, Mr. Mix received more than $1.2 million in attorney fees from referrals from Washington for former athletes who had medical issues. Mix's plea agreement acknowledges that these individuals were in need of the services Mix provided. While Mr. Washington clearly benefited from his wrongful acts in this case, others who likely stand to receive far lower sentences received benefits larger than those received by Washington.

Mr. Washington received approximately $323,000.00 in income he did not declare in tax years 2010 through 2014, resulting in an additional tax owing of a little over $90,000.00. The vast majority of the tax loss and the restitution noted in this case is the result of excise taxes of approximately $876,000 (¶47). Because these were excise taxes and not penalties or interest (although both calculations overstate the amount of benefit the false tax returns confer on a defendant), they are included in the tax loss figure, and in this case increase Mr. Washington's guideline range by 6 levels. This calculation clearly increases the punishment for Washington without any commensurate economic benefit to the crime, and we would ask that the Court consider a variance of up to 6 levels on this basis.

To conclude, it is clear that Mr. Washington benefited far less than others in related cases. His tax benefit was roughly $90,000, and the identity theft he plead guilty to did not (to his knowledge) cause any demonstrable harm to the victim, although he regrets involving a person he admires in this criminal proceeding. He has no prior criminal history and committed no offenses while on bond in this case. While he handled his charity poorly in many ways for several years, there is no question that most of his life he has been a productive and beneficial member of society. He hopes to complete

whatever sentence the Court imposes in this case, and then return to society and to try to make amends for his actions in this case. At sentencing Mr. Washington and undersigned counsel will likely request a variance of up to six levels as noted above, although more specific statements will be made after the Court makes findings on the disputed guideline issues which remain pending.

Respectfully submitted:

*/s/ Robin D. Fowler*
Robin D. Fowler            MO#000348
**BATH & EDMONDS, P.A.**
7944 Santa Fe Drive
Overland Park, KS   66204
Phone: (913) 652-9800; Fax: (913) 649-8494
E-mail:  robin@bathedmonds.com
Attorney for Kermit Washington

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of June, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties of record herein.

*/s/ Robin D. Fowler*
Robin D. Fowler            MO#000348